# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CASE NO:

CAROLINE KAUFMAN,

     Plaintiff,

v.

DARREN K. INDYKE and RICHARD D. KAHN
in their capacities as the executors of the
ESTATE OF JEFFREY EDWARD EPSTEIN,

     Defendants.

_____/

## COMPLAINT

Plaintiff, CAROLINE KAUFMAN, by and through her undersigned counsel, hereby files this Complaint against the Defendants, DARREN K. INDYKE and RICHARD D. KAHN in their capacities as the executors of the ESTATE OF JEFFREY EDWARD EPSTEIN, and states as follows:

## NATURE OF THE ACTION

1.     This suit arises out of Jeffrey Epstein's ("Epstein") sexual assault and rape of Plaintiff.

2.     Plaintiff, CAROLINE KAUFMAN, was sexually assaulted and raped by Jeffrey Epstein in approximately December 2010 when she was 17 years old in New York City.

3.     Plaintiff, CAROLINE KAUFMAN, initially met Epstein through his close associate, Susan Hamblin, at a horse show in Lake Placid in early 2010.  Hamblin approached KAUFMAN to ask her if she was a "model."  Hamblin then told KAUFMAN that her "boss" could help KAUFMAN get into the modeling industry.  During these conversations, KAUFMAN made clear to Hamblin that she was only 16 years old at that time.

4.       Following that meeting, Hamblin then pursued KAUFMAN on behalf of Epstein by calling her repeatedly throughout 2010.

5.       Eventually in and about December 2010, KAUFMAN was driven by a family friend from her home to Epstein's Manhattan mansion, at the instruction of Hamblin, to perform a "modeling interview" with Hamblin's boss, Epstein.

6.       Upon entering Epstein's Manhattan home, KAUFMAN was introduced to a number of people.  One of these individuals to whom she was introduced within the Epstein mansion was Andrew Albert Christian Edward a/k/a Prince Andrew, Duke of York.

7.       After a short period of time, KAUFMAN was escorted to a private area and told to completely undress for an older woman who took some photos of KAUFMAN.  KAUFMAN is under the reasonable belief and understanding now that this older woman was Ghislaine Maxwell.

8.       While KAUFMAN remained in the private area, Maxwell left the room with the camera. Shortly thereafter, Maxwell came back and advised KAUFMAN that her "boss" wanted to meet her.

9.       KAUFMAN then put a bikini back on and was escorted by Maxwell into a massage room. Epstein was nude on the massage table as she entered the room.

10.      After Maxell left the room, Epstein got up off the table, grabbed KAUFMAN and threw her against the massage table.  During this encounter, Epstein vaginally and anally raped KAUFMAN, while saying "I know you love it."  KAUFMAN was screaming for help during this encounter, but no one came to her rescue.

11.      Upon finishing, Epstein left the room and KAUFMAN put on her bikini and clothes and started hyperventilating. She then exited the massage room.  Upon exiting the massage room, Hamblin handed KAUFMAN $500 cash and said "Mr. Epstein is a very powerful man and he knows presidents.  If you say anything he will kill you and your family."

12.     After this vicious encounter with Epstein, KAUFMAN immediately left Epstein's mansion.

13.     Epstein's encounters with girls and young women, as well as his trafficking scheme, involved recruiting young females by making false promises and using his wealth, power and threats to intimidate the females into submission to his demands. This same pattern was repeated numerous times with numerous young women.

14.     As United States District Judge Kenneth Marra found, "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas. . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others." *Doe 1 v. United States,* 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).  Epstein organized this sex trafficking network to obtain hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.

15.      Epstein conspired with others and hired staff to maintain and keep secret this network of sexual abuse for years, which sprawled throughout Epstein's residences in New York, Florida, New Mexico, the United States Virgin Islands, and Paris. Epstein's preference was to have three different young females a day for his sexual pleasure.

16.      Despite his significant criminal activity, in 2008, Epstein received a shockingly minimal charge, pleading guilty to a single Florida state law charge of procuring a minor for prostitution and a non-prosecution agreement (a "NPA") with the U.S. Attorney for the Southern District of Florida. Unknown to the public and the victims at the time, Epstein's lawyers were pressuring the Government to commit to the NPA without informing the victims. Epstein's multiple victims were

kept in the dark and told to be "patient" while Epstein's lawyers worked to protect him and other potential co-conspirators from prosecution. Epstein served one year in jail, but was afforded the privilege of being able to leave the jail to go to work for twelve hours per day, six days per week.

17.     The NPA allowed Epstein to escape proportionate punishment for his actions and to continue operating his sex trafficking enterprise with liberty.

18.      A few years later, Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the New York Post: "Billionaire pervert Jeffrey Epstein is back in New York City — and making wisecracks about his just-ended jail stint for having sex with an underage girl. 'I am not a sexual predator, I'm an offender,' the financier told *The Post* yesterday. 'It's the difference between a murderer and a person who steals a bagel,' said Epstein." Amber Sutherland, *Billionaire Jeffrey Epstein: I'm a Sex Offender Not a Predator,* N.Y. Post (Feb. 25, 2011), https://nypost.com/2011/02/25/billionaire-jeffrey-epstein-im-a-sex-offender-not-a-predator/.

19.      In August 2018, just one year before his death, Epstein told a *The New York Times* reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable." James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People,* The New York Times (Aug. 12, 2019), https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

20.      When Epstein assaulted Plaintiff when she was just 17 years old, Epstein added her to his long list of victims by committing rape, sexual assault and battery against her. As such, Epstein is responsible for battery and intentional infliction of emotional distress pursuant to New York common law. The damage to Plaintiff has been severe and lasting.

21.     This action has been timely filed pursuant to N.Y. C.P.L.R. § 215(8)(a), which provides that a plaintiff shall have at least one year from the termination of a criminal action against the same defendant to commence an action with respect to the event or occurrence from which the criminal action arose. A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's claims arise was terminated on August 29, 2019.

22.     Any statute of limitations applicable to Plaintiff's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Plaintiff. Epstein's actions deprived Plaintiff of the opportunity to commence this lawsuit before his death. Until his death, Plaintiff feared that Epstein and his co-conspirators would harm her or her family, or ruin her life, if she came forward.

23.     Defendants are equitably estopped from asserting a statute of limitations defense. Allowing Defendants to do so would be unjust. Epstein and his co-conspirators intimidated each of his victims into silence by threatening their lives and their livelihoods. They therefore prevented Plaintiff from commencing this lawsuit before his death. By using threats, along with his wealth and power, Epstein was able to escape punishment for his intolerable and brutal crimes against countless young women and underage girls for the duration of his life.

## PARTIES, JURISDICTION AND VENUE

24.     Plaintiff, CAROLINE KAUFMAN is currently a resident of California, and at the time of the sexual assault, was a resident of Connecticut.

25.     Defendant, DARREN K. INDYKE is sued in his capacity as an appointed executor of the ESTATE OF JEFFREY EDWARD EPSTEIN.

26.     Defendant, Richard D. Kahn is sued in his capacity as an appointed executor of the ESTATE OF JEFFREY EPSTEIN.

27.     Jeffrey Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death.  Jeffrey Epstein maintained a residence in the Southern District of New York. As the Legal Representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands.

28.     The amount in controversy in this action exceeds the sum or value of $75,000.00, excluding interests and costs and is between citizens of different states. Accordingly, jurisdiction is proper under 28 U.S.C. § 1332.

29.     Venue is proper in this Court as Epstein's sexual assault on Plaintiff occurred in New York, New York, where he met her at the age of 17 and sexually assaulted and raped her.  Many of the events giving rise to these causes of action occurred in the Southern District of New York, where a substantial amount of Epstein's property is located. Thus, venue in this district is proper. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

A.     **JEFFREY EPSTEIN'S SEX TRAFFICKING ENTERPRISE**

30.     Jeffrey Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

31.     Epstein owned multiple residences and frequently travelled between them, including his home in Manhattan, New York, where the illegal sexual crimes against Plaintiff occurred. Epstein conservatively valued his New York townhome at $55,931,000.00. Epstein

6

conservatively valued his ranch at 49 Zorro Ranch Road, Stanley, New Mexico 87056, at $17,246,208.00. In addition, Epstein owned residences in the Virgin Islands, Florida, France, and even on his own island, Great St. James Island, where his transcontinental sex trafficking of hundreds of young females servicing him, his co-conspirators, and wealthy and powerful individuals around the world, occurred.

32.     The allegations herein concern Epstein's tortious acts against Plaintiff while in New York, where Epstein was staying at his home in Manhattan, New York.

33.     At all times material to this cause of action, Jeffrey Epstein utilized his seemingly unlimited power, wealth, and resources, as well as his deep connections to powerful and politically connected individuals to intimidate and manipulate his victims of sexual abuse.

34.     Epstein and his co-conspirators had perfected a scheme for manipulation and abuse of young females. As part of the scheme, a female "recruiter" would approach a young female and strike up a conversation in an effort to quickly learn about the young female's background and any vulnerabilities they could expose. The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young female something she needed. At times, the recruiter's lure would be a modeling opportunity, money for education, help for the young female's family, and a whole host of other related offers depending on their target's situation. Once in the residence, the recruiter and Epstein would work in concert to impress and intimidate the young female with displays of vast wealth, including having employees that were butlers and maids formally dressed around the house. They would also strategically place photographs of very powerful political and social figures amongst photographs and art displaying nude females in an effort to normalize the sexual abuse. They would also normalize the sexual abuse by placing a massage table and spa related products around the massage area in an effort

7

to legitimize the area where the abuse was set to occur. Once abused, Epstein and his co-conspirators continued to manipulate the victims, using their financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.

B.   **THE ARREST, PROSECUTION, AND DEATH OF EPSTEIN**

35.    The sexual trafficking ring described herein started at least as early as 1995 and continued up until at least July 2, 2019, when the U.S. Attorney's Office for the Southern District of New York ("SDNY") charged Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591. He was arrested on July 8, 2019, pursuant to the SDNY's Sealed Two Count Indictment, which is attached as Exhibit A.

36.    The Indictment described Epstein's conduct and his abuse and trafficking of females in the same trafficking operation he used to abuse and traffic Plaintiff.

37.    Epstein's last will and testament (the "Will") was executed on August 8, 2019, at the Metropolitan Correctional Center. The witnesses were Mariel Colon Miro and Gulnora Tali. The Will included affidavits from Darren K. Indyke and Richard D. Kahn, in which they swear an "Oath of Willingness to Serve as Executor and Appointment of Local Counsel."

38.    Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

39.    Epstein's last will and testament was filed on August 15, 2019, in the Probate Division of the Superior Court of the Virgin Islands.

40.    Darren K. Indyke and Richard D. Kahn filed a Certificate of Trust in the Superior Court of the Virgin Islands for Epstein's 1953 Trust on August 26, 2019. *See* Certificate of Trust, *In the*

*Matter of the Estate of Jeffrey E. Epstein,* Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

41.     Epstein's will was entered into probate on September 6, 2019, and the Superior Court of the Virgin Islands accordingly authorized Darren K. Indyke and Richard D. Kahn to administer Epstein's estate. *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein,* Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein,* Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019).

42.     The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate." The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated . . . to the then acting Trustees of The 1953 Trust."
Following Epstein's death, SDNY submitted a proposed *nolle prosequi* order in the criminal matter against him because it was required by law to do so after Epstein was deceased.

43.     In August 2019, U.S. District Judge Richard Beitnan formally dismissed SDNY's indictment against Epstein, terminating the criminal action against him. Plaintiff's claims are therefore timely under N.Y. C.P.L.R. § 215(8)(a).


C. **CAROLINE KAUFMAN**

44.     During the month of December 2010, Plaintiff, CAROLINE KAUFMAN, aged 17, traveled from her home in Connecticut to New York City at the direction of Epstein to pursue her modeling career.

45.     This direction by Epstein was false and instead was an attempt to sexually traffic in underage girls.

46.     Epstein and his co-conspirators enticed KAUFMAN to cross state lines, with the full knowledge and intent to sexually exploit KAUFMAN.

## FIRST CAUSE OF ACTION

### (Sexual Misconduct and Rape in the First Degree Against a Minor)

47.      Plaintiff repeats and re-alleges the allegations stated above in paragraphs 1-40 as if fully set forth herein.

48.     Epstein intentionally committed sexual misconduct and rape in the first degree by sexually assaulting Plaintiff when she was 17 years old.  As described above, Epstein, vaginally and anally forced himself upon the intimate parts of Plaintiff's body in an offensive and sexual manner without her consent.

49.     A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's first cause of action arises was terminated on August 29, 2019, less than one year prior to the filing of this Complaint. *See* N.Y. C.P.L.R. § 215(8)(a).

50.     As a direct and proximate result of Epstein's conduct, Plaintiff has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

51.     Plaintiff repeats and re-alleges the allegations stated above in paragraphs 1-40 as if fully set forth herein.

52.     As a direct result of these allegations as stated, Epstein committed intentional infliction of emotional distress against Plaintiff.

53.     Epstein's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Epstein's plan to recruit, entice, and assault Plaintiff goes beyond all possible bounds of decency and is intolerable in a civilized community.

54.     Epstein knew or disregarded the substantial likelihood that these actions would cause Plaintiff severe emotional distress.

55.     A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's second cause of action arises was terminated on August 29, 2019, less than one year prior to the filing of this Complaint. *See* N.Y. C.P.L.R. § 215(8)(a).

56.     As a direct and proximate result of Epstein's conduct, Plaintiff has in the past and will in the future, continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CAROLINE KAUFMAN, demands judgment for damages against the Defendants, DARREN K. INDYKE and RICHARD D. KAHN in their capacities as the executors of the ESTATE OF JEFFREY EDWARD EPSTEIN, and post-judgment costs.

## JURY DEMAND

Plaintiff, CAROLINE KAUFMAN, hereby demands a trial by jury on all causes of action within this pleading.


Dated:  July 2, 2020.

11

COHEN MILSTEIN SELLERS & TOLL PLLC

BY: */s/ Laura H. Posner*_____
    LAURA H. POSNER
    NY Bar No. 8612
    88 Pine Street, 14th Floor
    New York, NY 10005
    Telephone: (212) 220-2925
    lposner@cohenmilstein.com
    *Co-Counsel for Plaintiff*


COHEN MILSTEIN SELLERS & TOLL PLLC

BY: */s/ Michael Dolce*_____
    MICHAEL DOLCE
    Florida Bar No. 048445
    TAKISHA RICHARDSON
    Florida Bar No. 42007
    2925 PGA Boulevard, Suite 200
    Palm Beach Gardens, FL  33410
    Telephone: (561) 515-1400
    mdolce@cohenmilstein.com
    trichardson@cohenmilstein.com
    ldameron@cohenmilstein.com
    cpatrizio@cohenmilstein.com
    *Co-Counsel for Plaintiff*


LAW OFFICES OF CRAIG GOLDENFARB, P.A.

BY: */s/ Spencer T. Kuvin*_____
    SPENCER T. KUVIN
    Florida Bar No. 89737
    1800 S. Australian Avenue, Ste 400
    West Palm Beach, FL 33409
    Telephone:  (561) 697-4440 / Fax:  (561) 687-1950
    skuvin@800goldlaw.com
    lweir@800goldlaw.com
    *Co-Counsel for Plaintiff*